792 F.2d 330
 RICO Bus.Disp.Guide 6267
 A.J. CUNNINGHAM PACKING CORP. and Chicago Dressed Beef Co.,
Inc. and Continental Food Products, Inc. and
Florence Beef Company, Appellants,
v.
CONGRESS FINANCIAL CORPORATION and Philadelphia National Bank.
PIERCE TRADING COMPANY, Appellant,
v.
CONGRESS FINANCIAL CORPORATION and Philadelphia National Bank.
 Nos. 85-3366, 85-3380.
 United States Court of Appeals,
Third Circuit.
 May 30, 1986.
As Amended June 10, 1986.
Rehearing Denied July 1, 1986.
 
 Michael D. Fishbein (argued), Levin and Fishbein, Philadelphia, Pa., Michael P. Malakoff, Berger, Kapetan, Malakoff and Meyers, P.C., Pittsburgh, Pa., John Paul Curran, Curran, Mylotte, David & Fitzpatrick, Philadelphia, Pa., for appellants.
 James H. McConomy, Eric A. Schaffer (argued), Reed, Smith, Shaw and McClay, Pittsburgh, Pa., for Congress Financial Corp.
 David P. Bruton (argued), Henry John Kupperman, Drinker, Biddle and Reath, Philadelphia, Pa., Susan Hileman Malone, Richard DiSalle, Rose, Schmidt, Chapman, Duff and Hasley, Pittsburgh, Pa., for Philadelphia Nat. Bank
 Before HIGGINBOTHAM, SLOVITER and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 This is an appeal from a final judgment of the district court dismissing the complaints in these consolidated cases as time-barred. For the reasons that follow, we will reverse and remand for further proceedings.
 
 I.
 
 2
 On August 29, 1984, plaintiffs A.J. Cunningham Packing Corp., Chicago Dressed Beef Co., Inc., Continental Food Products, Inc. and Florence Beef Company filed an action against Congress Financial Corporation ("Congress") and Philadelphia National Bank ("PNB") alleging, in a three count complaint, that defendants had violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Secs. 1961-1968 (1982), and were liable for common law deceit and negligent misrepresentation. Plaintiff Pierce Trading Company filed a separate but essentially identical complaint on the same day. Simultaneously with the filing of their answers on November 8, 1984, defendants moved for summary judgment. The motions were limited in scope to their statute of limitations defense.
 
 
 3
 In the submissions made in connection with the summary judgment motion, the parties agreed that plaintiffs were on notice of the facts giving rise to their claims for relief in January 1981, more than two but less than six years before the action was commenced. Accordingly, there was no disputed material issue of fact and the parties thus presented a question of law for resolution by the district court pursuant to Fed.R.Civ.P. 56.
 
 
 4
 For purposes of ruling on the motions for summary judgment, defendants did not contest any of the material assertions of plaintiffs' complaints. Essentially, they were as follows: In the fall of 1979, American International Meat Company ("AIMC") and American International Meat Importers ("AIMI") were formed to engage in the meat brokerage business. Both companies were highly leveraged and undercapitalized. They were financed by a line of credit supplied by Congress which was secured by the AIMI/AIMC inventory and accounts receivable. During 1980, the financial condition of AIMI and AIMC steadily deteriorated to a position of insolvency. By the end of 1980, Congress had extended credit to AIMI/AIMC in excess of the inventory and accounts receivable reasonably available to repay the obligation to Congress. Although defendants knew AIMI and AIMC were insolvent, they repeatedly represented to various meat suppliers, including plaintiffs, that the companies were solvent in order to induce such suppliers to provide meat to AIMI which Congress could in turn use pursuant to its security agreement to satisfy the AIMI/AIMC debt without compensation to the suppliers. In reliance on these representations, plaintiffs sold approximately two million dollars worth of meat to AIMI on credit between late December 1980 and early January 1981. AIMI and AIMC thereupon filed petitions under Chapter 11 of the Bankruptcy Act which were later converted to liquidation proceedings under Chapter 7 of the Bankruptcy Code. The proceeds of the meat sold by plaintiffs to AIMI were used to completely satisfy the debt to Congress. Plaintiffs were left without any compensation for the two million dollars of meat they had sold to AIMI.
 
 
 5
 On May 28, 1985, 611 F.Supp. 532, the District Court decided the motions for summary judgment. The appropriate period of limitations applicable to all claims, the court held, was the Pennsylvania statute applying to fraud claims. The court acknowledged that there was a split of authority among the district courts in the Third Circuit on the question whether in enacting a revised statute of limitations scheme in 1976, the Pennsylvania legislature intended to reduce the six-year period of limitations that had traditionally been applicable to fraud claims arising in the Commonwealth. Finding such an intent, it concluded that a two-year period of limitations applicable to actions "for taking, detaining or injuring personal property" applied to fraud claims which accrued after the effective date of the statute. Accordingly, on this basis only, summary judgment was entered against the plaintiffs, and their claims were dismissed. Thereafter, plaintiffs timely filed a motion for reconsideration of the district court's order, which was denied. Plaintiffs timely filed notices of appeal from the district court's order denying reconsideration. We expedited the briefing of these appeals and scheduled them for argument in tandem with Malley-Duff Assoc. v. Crown Life Insurance Co., 792 F.2d 341 (3d Cir.1986).
 
 II.
 
 6
 For the purpose of determining the applicable state statute of limitations, the district court analogized plaintiffs' federal RICO claim to an action for common law fraud. Because it found that fraud was subject to a two-year limitation under Pennsylvania law at the time this cause of action accrued, the district court held that the RICO claim was time-barred. Subsequently, in Malley-Duff, we held that within each state all RICO claims, regardless of the specific factual allegations, should be subject to a uniform period of limitations, and that in Pennsylvania that period is the six-year "catchall" statute of limitations. For the reasons stated in Malley-Duff, we hold that the six-year statute applies to the RICO count, and that the district court erred in granting summary judgment on that claim.
 
 III.
 
 7
 We are now squarely faced with the difficult question of Pennsylvania law that we reserved in footnote 7 of Malley-Duff: What period of limitations governed common law fraud claims that accrued after June 27, 1978, the effective date of the Judicial Code of 1976, Act No. 142, 1976 Pa. Laws 586 (which substantially revised and modernized Pennsylvania's prior limitations scheme, under which a six-year period was applied to fraud claims), but before February 18, 1983, the effective date of 1982 amendments to the Judicial Code, Act No. 326, 1982 Pa. Laws. 1409, Sec. 201 (which expressly applied a two-year limitation to fraud claims)? This Court has previously noted that under the 1976 Judicial Code it is "unclear" whether the two-year period applicable to actions for "taking, detaining or injuring personal property...." 42 Pa.Con.Stat.Ann. Sec. 5524(3) (Purdon 1981), or the six-year catchall provision, 42 Pa.Cons.Stat.Ann. Sec. 5527(6) (Purdon 1981) applied to an action based on common law fraud. Biggans v. Bache Halsey Stuart Shields, 638 F.2d 605, 607 n. 2 (3d Cir.1980). The many district courts within this circuit that have reached the issue are divided.[1] Both sides have presented, in addition to an impressive array of authority, cogent arguments of statutory construction in favor of their respective positions. On balance, however, we are persuaded that if the Pennsylvania Supreme Court were confronted with the question, it would hold that plaintiffs' common law fraud claims are governed by a six-year statute of limitations, and therefore are timely filed.
 
 
 8
 It will be helpful to first review some statutory history. The following statute of limitations, enacted in 1713, remained on the books until 1978:
 
 
 9
 All actions of trespass quare clausum fregit, all actions of detinue, trover and replevin, for taking away goods and cattle, all actions upon account and upon the case (other than such accounts as concern the trade of merchandise between merchant and merchant, their factors or servants), all actions of debt, grounded upon any lending, or contract without specialty, all actions of debt, for arrearages of rent, except the proprietaries' quit-rents, and all actions of trespass, of assault, menace, battery, wounding and imprisonment, or any of them, which shall be sued or brought at any time after the five and twentieth day of April, which shall be in the year of our Lord one thousand seven hundred and thirteen, shall be commenced and sued within the time and limitation hereafter expressed, and not after; that is to say, the said actions upon the case, other than for slander, and the said actions for account, and the said actions for trespass, debt, detinue and replevin, for goods or cattle, and the said actions of trespass quare clausum fregit within three years after the said five and twentieth day of April next, or within six years next after the cause of such actions or suit, and not after. And the said actions of trespass, of assault, menace, battery, wounding, imprisonment, or any of them, within one year next after the said five and twentieth day of April next, or within two years next after the cause of such actions or suit, and not after; and the said actions upon the case for words, within one year next after the words spoken, and not after.
 
 
 10
 Act of March 27, 1713, 1 Sm.L. 76 (repealed by Act No. 53, 1978 Pa.Laws 202, Sec. 2). Fraud was viewed as coming within the six-year limitation of this statute. See Home Life Insurance Co. v. Greenspan, 360 Pa. 542, 63 A.2d 72 (1949); Flach v. Integrity Trust Co., 134 Pa.Super. 456, 4 A.2d 212 (1939).
 
 
 11
 In 1976, as part of an extensive reform of Pennsylvania's judiciary and judicial procedures, a new limitations scheme was enacted. As before, there was no express mention of actions for fraud. Two provisions, however, have been advanced as governing fraud claims. Section 5524, as enacted in 1976, provided:
 
 
 12
 The following actions and proceedings must be commenced within two years:
 
 
 13
 (1) An action for assault, battery, false imprisonment, false arrest, malicious prosecution or malicious abuse of process.
 
 
 14
 (2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act of neglect or unlawful violence or negligence of another.
 
 
 15
 (3) An action for taking, detaining or injuring personal property, including actions for specific recovery thereof.
 
 
 16
 (4) An action for waste or trespass of real property.
 
 
 17
 (5) An action upon a statute for a civil penalty or forfeiture, where the action is given to a government unit.
 
 
 18
 (6) An action against any officer of any government unit for the nonpayment of money or the nondelivery of property collected upon an execution or otherwise in his possession.
 
 
 19
 Defendants argue that subsection (3) applies to claims for fraud. Plaintiffs contend that, there being no express limitation on actions for fraud, the six-year "catchall" provision of Sec. 5527(6) applies:
 
 
 20
 The following actions and proceedings must be commenced within six years:
 
 
 21
 ....
 
 
 22
 (6) Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation).
 
 
 23
 In 1982, the Judicial Code was amended to provide specifically for fraud:
 
 
 24
 The following actions and proceedings must be commenced within two years:
 
 
 25
 ....
 
 
 26
 Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.
 
 
 27
 42 Pa.Cons.Stat.Ann. Sec. 5524(7) (Purdon Supp.1985). This amendment applied only to causes of action accruing after its effective date in February of 1983. Act No. 326, 1982 Pa.Laws. 1409, 1440. It does not, therefore, apply to the present case.
 
 
 28
 The question before us, then, is simply this: Does the reference to actions for "taking, detaining or injuring personal property" in the two-year statute encompass actions for fraud? If not, the six-year catchall provision must apply. We have found no decision of the Pennsylvania Supreme Court, or lower state courts,[2] on point. We must, as a federal court asked to decide an open question of state law, look to the fundamental principles of statutory construction that would inform a Pennsylvania court's consideration of the issue. Especially relevant is the Pennsylvania Supreme Court's admonition that
 
 
 29
 When confronted with questions of statutory construction, this Court has repeatedly held that the words of the statute are to be interpreted in light of the antecedent case law.... Thus, legislative intent to effectuate a drastic change in the law is not to be inferred by mere omission and implication.
 
 
 30
 Truck Terminal Realty Co. v. Pennsylvania, 486 Pa. 16, 23, 403 A.2d 986, 989 (1979). See also Klein v. Reid, 282 Pa.Super. 332, 336, 422 A.2d 1143, 1144 (1980) ("[C]ourts should be reluctant to overrule well-settled principles where to do so would result in an action being barred by the statute of limitations."). Starting, as we must, with the plain language of the judicial code,[3] we see little indication of an intent on the part of the legislature to drastically reduce the limitations period for fraud. As we previously noted, the statute does not mention fraud, and we believe the reference to actions for "taking, detaining or injuring personal property" more readily connotes the torts of conversion and trespass to chattels[4] than fraud, which requires neither a taking, a detention, nor an injury to personal property.[5] Of course, the phrase "injuring personal property" might be read to refer to any tort causing pecuniary loss, in which case it would include not only fraud, but virtually all actionable conduct. Such a reading is strained at best.[6]
 
 
 31
 Admittedly, the meaning of Sec. 5524(3) is not so readily apparent as to lead us to invoke the "plain language" rule. Cf. Thorn v. Reliance Van Co., 736 F.2d 929 (3d Cir.1984). Persuasive evidence in the legislative history of an intent to shorten the limitations period for fraud could yet tip the balance. Despite the valiant and scholarly efforts of the defendants, however, we see no such evidence. See also Comment, 53 Temple L.Q. 70, 81 (1980) ("[N]othing in the legislative history or in the Judicial Code itself indicates an intent on the part of the legislature to change the limit from six to two years."). According to defendants, one important purpose of the Judicial Code of 1976 was to consolidate the limitations period for all actions of "trespass" within a single, uniform provision, Sec. 5524. Thus, subsections (1) and (2) encompass all "trespasses" against persons, subsection (3) "trespass" against personal property, and subsection (4) "trespass" against real property. Common law fraud, defendants contend, is included among the trespasses to personal property by virtue of an 1887 statute that provided:
 
 
 32
 So far as relates to procedure, the distinctions heretofore existing between actions ex delicto be abolished, and that all damages, heretofore recoverable in trespass, trover, or trespass on the case, shall hereafter be sued for and recovered in one form of action, to be called an "action of trespass."
 
 
 33
 Act No. 158, 1887 Pa.Laws 271, Sec. 2 (repealed by Act No. 53, 1978 Pa.Laws. 202, 259). Defendants conclude that plaintiffs' position is untenable because it fails "to explain why, suddenly in 1976, the Pennsylvania Legislature would break with a century of tradition and for the first time impliedly create a different limitations period for fraud than for other trespass actions." Brief at 12.
 
 
 34
 This apparently seamless argument quickly unravels upon examination of its premises. Defendants offer no support for their assertion that an important purpose of the 1976 Judicial Code was to consolidate all trespasses under one limitation period. If anything, it would appear that the Judicial Code was intended, in part, to abolish any remnants of pleading and practice based on the ancient forms of action. We must be chary of any argument resorting to such distinctions.
 
 
 35
 Moreover, there is no "century of tradition" of treating all trespasses as having the same limitations period. The 1713 statute--in force until 1978--applied a six-year limitation to trespasses to land and a two-year period to trespasses to the person. See 22 Pa. Law Encyclopedia, Limitation of Actions, Sec. 23, at 413-14 (1959). The 1887 statute does not change this. See, e.g., Goodman v. Lukens Steel Co., 777 F.2d 113, 120 (3d Cir.1985) (applying two-year "personal injury" limitation to claims under 42 U.S.C. Sec. 1981). Another statute, passed in 1895, reaffirmed that "[e]very suit ... brought to recover damages for injury wrongfully done to the person" must be brought within two years. Act No. 135, 1895 Pa.Laws 236, Sec. 2 (repealed by Act No. 53, 1978 Pa.Laws 202, 264). Thus, defendants' attempt to portray plaintiffs' position as the one requiring a dramatic departure from established law is not persuasive. We would, in any event, be loathe to allow the presumption against reducing limitations periods--a rule designed to protect justifiable reliance on established law--to be overcome by such nice, academic analysis. We believe that a reduction in a period of limitation from six to two years is far more dramatic, to practitioners if not to theorists, than would be a decision to cease applying the same period to all the multifarious actions that may be brought under the rubric "trespass." See Black's Law Dictionary 1347 (5th ed. 1979) ("Trespass comprehends any misfeasance, transgression or offense which damages another person's health, reputation, or property.").
 
 
 36
 As additional evidence of a legislative intent to shorten the limitations period for fraud, defendants offer the Pennsylvania Bar Association Judicial Code Explanation of Sec. 5524:
 
 
 37
 [T]he periods applicable to conversion of or injury to personal property and waste or trespass to real property are reduced from six to two years to conform to the modern principle that claims based on conduct, and hence heavily relying on unwritten evidence, should have relatively short statutes of limitations, so as to bring them to trial (after allowance for pre-trial delays) before memories have faded.
 
 
 38
 Reprinted in 42 Pa.Cons.Stat.Ann. Secs. 101-1700, at xvi-xvii (Purdon 1981). We do not think that this explanation necessarily supports defendants' position. First, it refers to a reduction in the period for conversion or injury to personal property, not to the period for fraud. More important, as one commentary states, "this language can best be understood in terms of the desire to impose short limitations where a tangible manifestation of the wrongful action, giving notice of injury, has occurred. This is consistent with the principle that accident cases, in all likelihood the principal kind of action to which this section was directed, do not have a paper trail of evidence." Fiebach & Doret, A Quarter Century Later--The Period of Limitations For Rule 10b-5 Damage Actions in Federal Courts Sitting in Pennsylvania, 25 Vill.L.Rev. 851, 856 n. 26 (1980). In this respect, fraud is perhaps closer to a contract action than to other torts in that eyewitness testimony is less likely to be critical. The Judicial Code generally provides longer limitations periods for actions based on contract. See 42 Pa.Cons.Stat.Ann. Secs. 5525-5526 (Purdon 1981 & Supp.1985).
 
 
 39
 The final piece of evidence of legislative intent advanced by defendants is perhaps the most difficult to interpret of all. They point out that in a 1982 amendment to the Judicial Code, supra, fraud was expressly brought under the two-year statute. They contend that this was a direct response to statements in federal court opinions, such as Biggans, supra, regarding the ambiguity of the 1976 Code, and was merely intended as a clarification of existing law. Though this is plausible, defendants cite no legislative history to support their supposition. They also contend that the new language referring to actions "for injury to person or property" supports the interpretation that subsection (7) is merely a restatement and clarification of the original intent to cover all trespasses. (This, we note, ignores the use of the prefatory phrase "any other action," which suggests that the legislature knew that the original statutory language did not sweep as broadly as they might have wished.) Plaintiffs, on the other hand, point to the fact that the amendment was made strictly prospective as demonstrating that the legislature intended to change existing law. They point also to the many limitations periods that were clearly reduced by the 1982 amendment, arguing that they reflect the primary intent of the amendments--to reduce limitations periods. Finally, plaintiffs argue that by using the disjunctive term "or" in subsection 7 of Sec. 5524, the legislature intended to distinguish between "actions for injury to property" and "other actions sounding in trespass including deceit or fraud," and that only the former were within the language of Sec. 5524(3). These arguments are in approximate equipoise; we find the 1982 amendment of little help in divining the intent of the legislature in 1976. Absent a clear indication that the Pennsylvania legislature intended to change long-established law in the 1976 Code, we must presume that it did not.[7]
 
 
 40
 We hold, therefore, that plaintiffs' common law fraud claims, which by stipulation accrued in January 1981, are governed by a six-year statute of limitations, and were timely when filed on August 29, 1984.
 
 CONCLUSION
 
 41
 For the foregoing reasons, we will reverse the judgment of the district court and remand for further proceedings consistent with this opinion.
 
 
 42
 SLOVITER, Circuit Judge, concurring in the judgment.
 
 I.
 
 43
 The difficulty in divining state law, one of the most unproductive byproducts of diversity jurisdiction, once again divides this court, this time in the context of application of a federal statute. Much of the needless expenditure of judicial and attorney time and effort on this issue could easily be avoided were Congress to specify a statute of limitations at the same time as it enacts a statute that explicitly provides for private suit. Nonetheless, although aware of the difficulty the courts experience in categorizing new federal statutory actions under state statutes of limitations enacted for different purposes, Congress enacted RICO in 1970 with a provision for private actions, 18 U.S.C. Sec. 1964(c), but without a statute of limitations.
 
 As the ABA Task Force Report stated:
 
 44
 the law regarding the applicable statute of limitations for Civil RICO claims is confused, inconsistent, and unpredictable. The current approach is virtually guaranteed to incite complex and expensive litigation over what should be a straightforward matter. In addition to disputes over the proper characterization of the RICO claim, which indeed may vary depending on whether it is governed by federal or state law, the current approach raises the possibility of further conflicts over the appropriate choice of law in multistate factual situations.
 
 
 45
 ABA Section of Corporation, Banking and Business Law, Report of the Ad Hoc Civil RICO Task Force 391-92 (1985) [hereafter cited as ABA Task Force Report]. The ABA Task Force Report recommended that Congress amend RICO to provide an express statute of limitations. Id. at 393. A court cannot parry the issue as deftly.
 
 II.
 
 46
 Many of the same pragmatic considerations referred to by the Court in Wilson v. Garcia, --- U.S. ---, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), lead me to agree with the majority, as set forth in its opinion in Malley-Duff & Associates, Inc. v. Crown Life Insurance Co., 792 F.2d 341, being filed contemporaneously herewith, that a uniform statute of limitations should be selected in RICO cases. Although the Sixth Circuit has recently opted for an approach that selects the applicable limitations in the individual case on the basis of a characterization of the kind of factual circumstances and legal theories presented, Silverberg v. Thomson McKinnon Securities, 787 F.2d 1079 (6th Cir. 1986), I find that approach inconsistent with the principles of Wilson v. Garcia.
 
 
 47
 An ad hoc approach would create "uncertainty and time-consuming litigation." Wilson v. Garcia, 105 S.Ct. at 1945. RICO is similar to Sec. 1983 in that both "encompass numerous and diverse topics and subtopics." Id. at 1946. Many civil RICO actions have alleged wire and mail fraud as predicate acts, but 18 U.S.C. Sec. 1961 defines "racketeering activity" to include nine state law felonies and violations of over 25 federal statutes, including those prohibiting bribery, counterfeiting, embezzlement of pension funds, gambling offenses, obstruction of justice, interstate transportation of stolen property, and labor crimes. RICO presents the same danger identified in Wilson v. Garcia that two or more limitations periods could apply to one claim, and thus the same uncertainty would arise as to the period applicable to any given action. In these circumstances, I agree with my colleagues that we should be guided by the decision in Wilson v. Garcia and adopt one period of limitations for RICO actions.
 
 
 48
 I cannot agree, however, with the approach taken by the majority in deciding where to look for that limitations period, which it sets forth in the opinion in Malley-Duff and incorporates here. The choice open to us is whether to follow Wilson v. Garcia in seeking the most nearly applicable state statute of limitations or to follow the approach used in DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), in looking to the most nearly analogous federal statute of limitations.
 
 
 49
 I recognize that there are some good reasons to support the decision reached by the majority to follow Wilson v. Garcia and look to state law. In the first place, it has been the traditional practice of the federal courts to look to state statutes of limitations for federal causes of action unless Congress specifically provided otherwise. See United Automobile Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 703-04, 86 S.Ct. 1107, 1112, 16 L.Ed.2d 192 (1966). Even in DelCostello, where the Court chose a federal statute, it stated that "resort to state law remains the norm for borrowing of limitations periods," 462 U.S. at 171, 103 S.Ct. at 2294, and "absent some sound reason to do otherwise, Congress would likely intend that the courts follow their previous practice of borrowing state provisions." Id. at 158-59 n. 12, 103 S.Ct. at 2287 n. 12. In the second place, Wilson v. Garcia itself held that a state limitations period should be selected. Finally, the lower federal courts have been almost, if not entirely, uniform in applying a state statute of limitations in RICO cases. See, e.g., Compton v. Ide, 732 F.2d 1429, 1433 (9th Cir.1984); Alexander v. Perkin Elmer Corp., 729 F.2d 576, 577-78 (8th Cir.1984).
 
 
 50
 On the other hand, responding to these arguments in reverse order, the fact that other courts have chosen a state statute of limitations, while significant, does not absolve us of our independent responsibility to look anew at the issue when it comes before this court for the first time. The other federal courts considering this issue have not generally analyzed the decision in terms of applying state rather than federal law but have instead focused on which state statute of limitations to apply. In fact, the Court in DelCostello selected federal law notwithstanding its earlier opinion in United Parcel Service, Inc. v. Mitchell, 451 U.S. 56 (1981), which had decided that a suit by an employee alleging employer breach of the collective bargaining agreement and union breach of a duty of fair representation was governed by a state statute of limitations for vacation of an arbitration award. The DelCostello Court explained that in Mitchell, it had "limited [its] consideration to a choice between two state statutes of limitations; [it] did not address the contention that [it] should instead borrow a federal statute of limitations." 462 U.S. at 154, 103 S.Ct. at 2285 (emphasis in original). When considering the latter issue in DelCostello, it felt free to rule that it was the federal statute that was applicable. For the same reason, the decisions by other federal courts in applying various state statutes of limitations are not persuasive authority governing the more fundamental decision of whether any state statute, rather than a federal one, should be used.
 
 
 51
 Second, some of the considerations referred to by the Court in Wilson v. Garcia to support its choice of a state statute of limitations for Sec. 1983 actions are not as applicable to RICO. In Wilson, the Court was able to select one generic label, the tort action for the recovery of damages for personal injuries, for Sec. 1983 suits. It did so because "[t]he atrocities that concerned Congress in 1871 plainly sounded in tort." 105 S.Ct. at 1948. Also, state statutes of limitations framed for purposes of state tort law or which have been so construed by the state courts provide universally available analogies based on neutral state policies. See id. at 1949. Such a readily available state law analogy is not presented for RICO.
 
 
 52
 As the majority opinion in Malley-Duff demonstrates, there really is no closely analogous statute of limitations to RICO under state law. The majority rejects applying fraud, although that is the state limitations period most frequently applied, see, e.g., Alexander v. Perkin Elmer Corp., 729 F.2d 576, 577-78 (8th Cir.1984); Umstead v. Durham Hosiery Mills, Inc., 578 F.Supp. 342, 348 (M.D.N.C.1984), rejects civil penalty or forfeiture, rejects the general state statute for personal and property injury, and alights on the "catch all" limitations period which covers all actions for which the state has not otherwise provided. I find this unsatisfactory. The Pennsylvania courts have not found many occasions to use the "catch all" for statutory actions since the statute of limitations scheme was revised in 1978, see, e.g., Webster v. Great American Insurance Co., 544 F.Supp. 609 (E.D.Pa.1982) (Pennsylvania Human Relations Act), and the statutes to which the "catch all" would be applicable do not necessarily have any correspondence to the types of claims encompassed by RICO. See id.
 
 
 53
 In Wilson v. Garcia, the Court rejected application of a "catch all" statute because it was unlikely that Congress would have intended it to apply. See 105 S.Ct. at 1948. There is no reason to believe that Congress would have had any different intent with respect to RICO, particularly in light of the wide disparity of claims that the "catch all" encompasses.
 
 
 54
 The majority suggests that the ABA Task Force Report approves of its selection of the "catch all" limitations for RICO. Although the ABA Task Force stated that if a state limitations is applied, it would be better to apply one for statutory causes of action than for one based on the predicate offenses alleged as part of a RICO claim, it believed that there were serious difficulties even with the former approach. That is evident from the remainder of the paragraph omitted from the majority's quotation. See Malley-Duff, 792 F.2d at 352-53. Referring to the state "catch all" for statutory actions, the ABA Task Force Report stated:
 
 
 55
 But not all states have a general statute of limitations for statutory causes of action. Although most have a limitations period for actions in the nature of a penalty or forfeiture, the courts have rightly concluded that the treble damage RICO claim, like the treble damage antitrust claim, is not primarily penal in nature. Thus, in many situations, there may be no alternative but to look to the statute of limitations applicable to state claims most like the underlying predicate offenses.
 
 
 56
 ABA Task Force Report at 391 (footnotes omitted).
 
 
 57
 The absence of an available "catch all" in all states distinguishes the RICO choice from the Sec. 1983 choice made in Wilson v. Garcia. There the Court stated:
 
 
 58
 The characterization of all Sec. 1983 actions as involving claims for personal injuries minimizes the risk that the choice of a state statute of limitations would not fairly serve the federal interests vindicated by Sec. 1983.
 
 
 59
 105 S.Ct. at 1949. I believe that a similar statement could not be made with confidence about RICO and state statutory "catch alls". Moreover, I cannot reconcile the majority's position "that civil RICO is truly sui generis and that particular claims cannot be readily analogized to causes of action known at common law," Malley-Duff, 792 F.2d at 352, with its position that a statute other than a "catch all" may be used in other states within this circuit. Id. at 349 n. 16.
 
 
 60
 The primary position of the Task Force was that RICO's objectives would be best served by applying a uniform federal statute of limitations to civil RICO cases. ABA Task Force Report at 392-93. The Task Force Report recognized that such uniformity could be achieved through application to RICO of the DelCostello approach, but was uncertain whether RICO presented a "special exception" and whether the courts would be inclined to proceed in this manner since they have not been so inclined heretofore. Id. at 392.
 
 
 61
 DelCostello did not refer to any "special exception" although, as I noted earlier, it recognized that the norm was to borrow state statutes of limitations. The court pointed out that "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law." DelCostello, 462 U.S. at 172, 103 S.Ct. at 2294. I believe that "federal law clearly provides a closer analogy than available state statutes" for civil RICO claims.
 
 
 62
 There are abundant illustrations both in the Supreme Court and in this court to support turning to federal rather than state statutes. Many of them are referred to in DelCostello itself. Thus, in McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958), a federal limitations period was applied to a seaworthiness action under general admiralty law rather than the state statute governing personal injury suits. The Court eschewed applying state statutes of limitations to actions to enforce a federally created equity right in Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946). More recently, in Occidental Life Insurance Co. v. EEOC, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), the Court rejected application of any state statute of limitations to EEOC enforcement actions. It stated that "the Court has not mechanically applied a state statute of limitations simply because a limitations period is absent from the federal statute." Id. at 367, 97 S.Ct. at 2455. It pointed out that "[s]tate legislatures do not devise their limitations periods with national interests in mind," and reiterated that " '[a]lthough state law is our primary guide in this area, it is not, to be sure, our exclusive guide.' " Id. (quoting Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975)). This court has applied DelCostello in three recent cases. See Taylor v. Ford Motor Co., 761 F.2d 931 (3d Cir.1985) (applying the six month rule of Sec. 10(b) of the NLRA to suits to enforce an arbitrator's decision), cert. denied, --- U.S. ----, 106 S.Ct. 849, 88 L.Ed.2d 890 (1986); Local Union 1397, United Steelworkers v. United Steelworkers, 748 F.2d 180 (3d Cir.1984) (applying the Sec. 10(b) limitation to suits brought under Sec. 102 of the LMRDA); Sisco v. Consolidated Rail Corp., 732 F.2d 1188 (3d Cir.1984) (applying Sec. 10(b) of the NLRA to duty of fair representation claims under the Railway Labor Act).
 
 
 63
 One of the reasons for rejecting state limitations is if their application would be inconsistent with the underlying policies of the federal statute. That was the reason given in DelCostello because typically short state limitations periods for vacating arbitration awards failed to provide the aggrieved employee with a satisfactory opportunity to vindicate his or her rights. See DelCostello, 462 U.S. at 166, 103 S.Ct. at 2291. Although Pennsylvania's "catch all" of six years would not suffer from this defect, it is unclear whether other states might have a short "catch all" which would be inconsistent with federal policy to utilize civil RICO statutes as an additional enforcement tool. Furthermore, the majority fails to address what would be the appropriate statute of limitations for those states that have no "catch all" for statutory actions.
 
 
 64
 An advantage of turning to a federal statute of limitations is that there is one readily available that appears to be uniquely appropriate. Civil RICO can be characterized as a congressionally provided remedy for repeated criminal behavior that results in economic injury. The civil remedy provided in the Clayton Act has a similar purpose. The analogy between the two is strong. Both section 4 of the Clayton Act, 15 U.S.C. Sec. 15, and the civil enforcement provision of RICO, 18 U.S.C. Sec. 1964(c), provide for the recovery of three-fold damages and the cost of suit, including a reasonable attorney's fee. Both require the plaintiff to prove an injury "in his business or property by reason of" a violation. Moreover, Congress explicitly used the Clayton Act as the model for the civil provisions of RICO, as the Supreme Court recognized in Sedima, S.P.R.L. v. Imrex Co., --- U.S. ----, 105 S.Ct. 3275, 3280-81, 3282 n. 8, 87 L.Ed.2d 346 (1985).
 
 
 65
 Finally, when considering the statute of limitations that should be applied to a new and important federal statutory cause of action, it is more satisfying intellectually to apply one to which Congress has given its specific attention, as it did when it amended the Clayton Act to provide a four year statute of limitations, see 15 U.S.C. Sec. 15b, than to apply one to which the state legislatures have given no specific attention and which they swept up instead in a "catch all."
 
 III.
 
 66
 Even if this court were to opt for applying a state statute of limitations to civil RICO claims, I believe that at least for claims accruing after 1983 when Pennsylvania again changed its statute of limitations scheme, the appropriate statute to apply is the two year limitations period for actions seeking redress for most tortious behavior. See 42 Pa.Cons.Stat.Ann. Sec. 5524 (1981 & Supp.1985). That amendment, enacted in 1982, specifies that the two year limitation period applies to the following:
 
 
 67
 Any action or proceeding to recover damages for injury to persons or property which is founded on negligent, intentional or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.
 
 
 68
 Id. Sec. 5524(7). Thus, Pennsylvania now has a consolidated statute of limitations which encompasses all tortious and fraudulent injuries to persons or properties.
 
 
 69
 Because civil RICO requires an injury to "business or property" brought about by intentional criminal conduct, this statute provides a limitation period for analogous causes of action. While I recognize the difficulty the majority faces in finding an analogous statute for the interim period between the 1976 and 1982 amendments at issue here, I see no reason why it does not acknowledge the RICO analogy to section 5524 for claims accruing after 1983.
 
 IV.
 
 70
 In deciding that fraud was covered by a six year period of limitations in Pennsylvania during the interim period between the Pennsylvania legislature's actions in 1976 and 1982, the majority acknowledges there is no governing Pennsylvania interpretation. Although there are good arguments on both sides of that issue, and my inclination might be contrary to that of the majority, I am not sufficiently secure in the correctness of the two year approach for state fraud cases to dissent on this issue. I believe that clarification, if any, should come from the Pennsylvania courts.
 
 V.
 
 71
 My analysis has led me to conclude that plaintiffs' civil RICO claims should be measured by the four year statute of limitations applicable to Clayton Act claims. Since plaintiffs' claims clearly accrued within four years of the date on which they filed their complaint, I agree with the majority in its ultimate decision that the judgment of the district court should be reversed and the matter should be remanded for further proceedings.
 
 
 
 [1]
 The following opinions opt for the six-year statute: Vosbikian v. Wasserstrom, No. 84-4674 (E.D. Pa. January 13, 1986) (Green, J.); Bernicker v. Pratt, 595 F.Supp. 1034 (E.D.Pa.1984) (Lord, J.); Loughman v. Consol-Pennsylvania Coal Co., Nos. 83-921 et al. (W.D.Pa. Dec. 5, 1984) (Mansmann, J.); D'Iorio v. Adonizio, 554 F.Supp. 222 (M.D.Pa.1982) (Caldwell, J.); Culbreth v. Simone, 511 F.Supp. 906 (E.D.Pa.1981) (Giles, J.)
 Coming down in favor of the two-year statute, in addition to the district court in the instant case are: Sariego v. Gerber Products Co., 636 F. Supp. 484 (E.D.Pa. 1983) (O'Neill, J.); Malley-Duff Assoc. v. Crown Life Ins. Co., No. 81-439 (W.D.Pa. March 20, 1984) (Bloch, J.), rev'd on other grounds, 792 F.2d 341 (3d Cir.1986); Fickinger v. C.I. Planning Corp., 556 F.Supp. 434 (E.D.Pa.1982) (Shapiro, J.).
 In Ferber v. Morgan Stanley Co., [1983-84 Transfer Binder] Fed.Sec.L.Rep. (CCH) p 99,634 (E.D.Pa.1984), Judge Fullam held that the two-year period applied to fraud. Later, in Kornish v. Smith Barney, No. 84-4182 (E.D.Pa. Feb. 5, 1985) [Available on WESTLAW, DCTU database], Judge Fullam came to "doubt the correctness of my decision in Ferber," slip op. at 4 n. 1, and held that the six-year statute controlled.
 
 
 [2]
 Defendants cite Bickell v. Stein, 291 Pa.Super. 145, 435 A.2d 610 (1981) as holding that Sec. 5524(3) is applicable to claims for fraud. That case involved claims for fraud and contractual interference in the sale of realty. Without discussion, the court stated that the applicable statute was Sec. 5524(3) and (4). Subsection (4) relates to actions for "waste or trespass of real property." It is not at all clear what the court intended, and we have not found this decision helpful
 
 
 [3]
 "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.Cons.Stat.Ann. Sec. 1921(b) (Purdon Supp.1985)
 
 
 [4]
 Fraud is one means by which conversion or trespass to chattels may be effected, Restatement (2d) of Torts Sec. 221(b) (1965), but that fact does not imply any equivalence among these causes of action
 
 
 [5]
 See Restatement (2d) of Torts Sec. 525 (1965):
 One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.
 
 
 [6]
 "The oblique reference to injuries to personal property in Sec. 5524(3) hardly seems to be a reference to fraudulent conduct and, in the context of actions for taking and detaining personal property, Sec. 5524(3) would seem to embrace only wrongful actions involving some physical or tangible impact." Fiebach & Doret, A Quarter Century Later--The Period of Limitations for Rule 10b-5 Damage Actions in Federal Courts Sitting in Pennsylvania, 25 Vill.L.Rev. 851, 856 n. 26 (1980)
 
 
 [7]
 Our decision in Mazzanti v. Merck and Company, 770 F.2d 34 (3d Cir.1985) (per curiam), is not to the contrary. That case involved a claim for tortious interference with contract that accrued in February of 1980. We predicted that the Pennsylvania Supreme Court would apply Sec. 5524(6). That decision, however, relied principally on a Court of Common Pleas decision, Home for Crippled Children v. Erie Insurance Exchange, 130 P.L.J. 480 (Allegheny Cty.1982), aff'd mem., 329 Pa.Super. 610, 478 A.2d 84 (Pa.Super.1984), which in turn held that the plain language of Sec. 5524(3) encompassed tortious interference, since contract rights are personal property under Pennsylvania's law. As we noted previously, only the most strained reading of "injuring personal property" could include fraud