792 F.2d 341
 54 USLW 2651, RICO Bus.Disp.Guide 6266
 MALLEY-DUFF & ASSOCIATES, INC. Appellant,
v.
CROWN LIFE INSURANCE CO., a Corp. Agency Holding Corp, an
Illinois Corp. Agency Holding Corp, an Ohio Corp. Clarke
Burton Lloyd, individual Kerry Patrick Craig, individual
Diane Pariano, individual Ehrman Ratini Oglevee & Craig
Inc., a Pennsylvania Corporation Robert Oglevee, individual.
 No. 84-3228.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 19, 1985.
Decided May 30, 1986.
As Amended June 10, 1986.
Rehearing Denied July 1, 1986.
 
 Alexander Black (argued), Robert W. Brown, Mindy J. Mulvihill, Buchanan, Ingersoll Professional Corp., Pittsburgh, Pa., for Crown Life Ins. and Clarke Burton Lloyd.
 John H. Bingler, Jr. (argued), Glenn E. Bost, II, Thorp, Reed and Armstrong, Pittsburgh, Pa., for Agency Holding Corp. (Illinois); Agency Holding Corp. (Ohio); Kerry Patrick Craig; Diane Pariano; Ehrman Ratini Oglevee & Craig, Inc.; and Robert Oglevee.
 Michael D. Fishbein, Levin and Fishbein, Philadelphia, Pa.,Michael P. Malakoff, Berger, Kapetan, Malakoff & Meyers, P.C., Pittsburgh, Pa., John Paul Curran, Curran, Mylotte, David & Fitzpatrick, Philadelphia, Pa., for amici curiae Peirce Trading Co.; A. J. Cunningham Packing Corp.; Chicago Dressed Beef Co.; Continental Food Products, Inc.; Florence Beef Co.
 James H. McConomy, Eric A. Schaffer, Reed, Smith, Shaw and McClay, Pittsburgh, Pa., for amicus curiae Congress Financial Corp.
 H. Woodruff Turner, David A. Borkovic (argued), Kirkpatrick, Lockhart, Johnson and Hutchison, Pittsburgh, Pa., for appellant.
 Before HIGGINBOTHAM, SLOVITER and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 This is an appeal from a final summary judgment of the district court dismissing the complaint of appellant Malley-Duff & Associates, Inc. ("Malley-Duff"). For the reasons that follow, we will reverse and remand for further proceedings.
 
 I.
 
 2
 Until February 13, 1978, Malley-Duff was an agent of defendant Crown Life Insurance Company ("Crown Life") for a territory surrounding and including Pittsburgh, Pennsylvania. Crown Life required Malley-Duff to represent it exclusively. Malley-Duff alleges that defendants formed an "enterprise," the purpose of which was "to acquire, take over or eliminate various Crown agencies that had lucrative territories in the United States of America," and which did so by "false and fraudulent means and pretenses." The enterprise allegedly acquired Malley-Duff's agency by first imposing, nine months into the fiscal year 1977, a "bogus" production quota that could not be met, and then terminating the agency when it in fact failed to meet the quota. According to the complaint, the enterprise used similar means to acquire Crown Life agencies in Chicago, Peoria, Cleveland, Newark, Hartford, Denver, and elsewhere. It is further alleged that terminated agents were defrauded out of renewal commissions.
 
 
 3
 In April of 1978, Malley-Duff filed suit ("Malley-Duff I") against defendants Crown Life, Lloyd, Craig, Agency Holding Company (Illinois), and Agency Holding Company (Ohio), as well as another individual not named in this suit, alleging violations of the federal antitrust laws and conspiracy to tortiously interfere with contract. The case was tried to a jury, but defendants won a directed verdict on the antitrust claims at the close of Malley-Duff's case. Malley-Duff won a verdict of $900,000 on the state conspiracy claim, but the jury concluded in answer to a special interrogatory that there was no tortious interference. On appeal, this court ordered a new trial, holding that there was sufficient evidence of a violation of Sec. 1 of the Sherman Act to present a jury issue, and "that the verdict form answers on the remaining state law claims were inconsistent," Malley-Duff & Associates v. Crown Life Insurance Company, 734 F.2d 133, 136 (3d Cir.), cert. denied, --- U.S. ---, 105 S.Ct. 564, 83 L.Ed.2d 505 (1984).
 
 
 4
 On March 20, 1981--prior to trial of Malley-Duff I--Malley-Duff filed the instant complaint, alleging causes of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Secs. 1961-1968 (1982),[1] for conspiracy to interfere with civil rights, 42 U.S.C. Sec. 1985,[2] and a pendent state civil conspiracy theory. The RICO claims can be divided into two categories: (1) claims arising out of the allegedly fraudulent termination of the agency;[3] and (2) claims arising out of alleged obstructions of justice by defendants in the course of the discovery phase of Malley-Duff I.[4] The Sec. 1985 claims were based on the same allegedly obstructive conduct. The civil conspiracy count incorporated allegations involving both the termination and the obstructions of justice.
 
 
 5
 This case was consolidated with Malley-Duff I on November 2, 1981, but was severed on January 11, 1983, prior to trial. Defendants had filed a motion for summary judgment on July 29, 1982. On March 23, 1984, the district court granted defendants' motion and entered judgment for them on all counts. This appeal followed.[5]
 
 II.
 
 6
 The district court dismissed Malley-Duff's RICO claims, to the extent they arose out of the allegedly fraudulent termination of its agency, on the ground that they were barred by the applicable statute of limitations. Because federal law does not provide a statute of limitations for civil RICO actions, the district court followed the settled practice of turning to the law of the forum state (in this case Pennsylvania) to "borrow" the limitations period for the state cause of action most closely analogous to Malley-Duff's claims.[6] See Board of Regents v. Tomanio, 446 U.S. 478, 483-84, 100 S.Ct. 1790, 1794-95, 64 L.Ed.2d 440 (1980); Johnson v. Railway Express Agency, 421 U.S. 454, 462-63, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); see generally Note, Limitation Borrowing in Federal Courts, 77 Mich.L.Rev. 1127 (1979). The parties agreed that common law fraud was the state cause most analogous to these claims, but disagreed as to whether a two- or six-year limitations period governed such actions in Pennsylvania.[7] The district court held that the two-year statute applied, and that claims filed on March 20, 1981, relating to events that occurred in early 1978,[8] were therefore time-barred.
 
 
 7
 Subsequent to the district court's decision, the Supreme Court of the United States decided Wilson v. Garcia, --- U.S. ----, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), which established a three-part inquiry[9] to guide the selection of the statute of limitations that will govern a federal claim. First, we must determine whether it is state or federal law that controls the characterization of the claim. Second, we must decide whether all claims arising under a particular federal law "should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case." Finally, "we must characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle." 105 S.Ct. at 1943. In the subsections that follow we engage in the prescribed inquiry.[10] Our function here is to legislate interstitially, and in doing so we are mindful of Justice Holmes' admonition that we are "confined from molar to molecular motions." Southern Pacific Co. v. Jenson, 244 U.S. 205, 221, 37 S.Ct. 524, 531, 61 L.Ed. 1086 (1917) (dissent). We conclude that within each state all civil RICO claims should be characterized uniformly, in accordance with federal law, and that in Pennsylvania the most appropriate limitations period for all civil RICO claims is the six-year residual statute of limitations.
 
 A. Controlling Law
 
 8
 In Wilson v. Garcia, which arose in New Mexico, the question whether state or federal law controlled the characterization of Sec. 1983 claims was critical because the Supreme Court of New Mexico had definitively decided, as a matter of state law, that Sec. 1983 claims should be analogized for limitations purposes to state claims brought under the New Mexico Torts Claim Act. DeVargas v. New Mexico, 97 N.M. 563, 642 P.2d 166 (1982). The United States Supreme Court held that DeVargas was not binding on federal courts. The Court noted that the "characterization of Sec. 1983 for statute of limitations purposes is derived from the elements of the cause of action, and Congress' purpose in providing it. These, of course, are matters of federal law. Since federal law is available to decide the question, the language of [42 U.S.C.] Sec. 1988 directs that the matter of characterization should be treated as a federal question." 105 S.Ct. at 1943. The court found further support in Sec. 1988's[11] instruction that state law shall apply "so far as the same is not inconsistent with" federal law, observing that "Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action." 105 S.Ct. at 1944. In addition, the Court stated, "[i]n borrowing statutes of limitations for other federal claims, this Court has generally recognized that the problem of characterization 'is ultimately a question of federal law.' " Id. (quoting Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 706, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966)) (footnote omitted).
 
 
 9
 We have found no decisions of the Pennsylvania Supreme Court, or any lower court, purporting to characterize RICO claims under Pennsylvania law for limitations purposes. Nonetheless, if state law were to control the chartacterization our function would be to predict how the Pennsylvania Supreme Court would act, rather than to apply the principles developed by the U.S. Supreme Court in Wilson v. Garcia and other "borrowing" decisions. Thus, we cannot overlook this issue. Fortunately, we believe the resolution is quite clear. Though we cannot rely, as the Court did, on Sec. 1988, we note that its borrowing principles are not unique--the confluence of the Supremacy Clause and the Rules of Decision Act produce the same result in other cases: "If ... federal law is both pertinent and valid, it applies because the supremacy clause of the Constitution so commands; if the federal law is impertinent or invalid, state law applies because Congress has so directed." Westen & Lehman, Is There Life for Erie After the Death of Diversity?, 78 Mich.L.Rev. 311, 316 (1980). Moreover, the federal interests in uniformity and having "firmly defined, easily applied rules," emphasized in Wilson v. Garcia, 105 S.Ct. at 1944 (quoting Chardon v. Fumero Soto, 462 U.S. 650, 667, 103 S.Ct. 2611, 2622, 77 L.Ed.2d 74 (1983) (Rehnquist, J., dissenting)) apply with as much force to RICO as to other federal causes, such as Sec. 1983, Sec. 301 of the Labor Management Reporting Act, see Auto Workers, supra, or the federal antitrust laws, see Moviecolor Limited v. Eastman Kodak Co., 288 F.2d 80, 83-84 (2d Cir.), cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961), Wilson v. Garcia, 105 S.Ct. at 1944 n. 19. We conclude that federal law controls characterization of RICO claims for limitations purposes.
 
 
 10
 B. Uniform or Particularized Characterization?
 
 
 11
 In characterizing Malley-Duff's termination-related RICO claims as analogous to claims for common law fraud, the parties and the district court have followed the settled borrowing practice within this Circuit of parsing the particular factual allegations and legal theories supporting an individual federal claim, rather than looking to the federally-created cause of action for a broader analogy that could encompass all claims brought thereunder in a given state. In Wilson v. Garcia the Supreme Court adopted the latter approach in the context of Sec. 1983 cases, and we believe that their reasoning suggests that the same approach should be followed with civil RICO.
 
 
 12
 In Wilson v. Garcia the Court noted that the practice of borrowing state statutes of limitations promotes the policy of repose, but that
 
 
 13
 when the federal claim differs from the state cause of action in fundamental respects, the State's choice of a specific period of limitation is, at best, only a rough approximation of "the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones."
 
 
 14
 105 S.Ct. at 1945 (quoting Johnson v. Railway Express Agency, 421 U.S. at 463-64, 95 S.Ct. at 1722). Section 1983, the Court stated, "can have no precise counterpart in state law.... [A]ny analogies to those causes of action are bound to be imperfect." Id. (footnote omitted).
 
 
 15
 In this light, practical considerations help to explain why a simple, broad characterization of all Sec. 1983 claims best fits the statute's remedial purpose. The experience of the courts that have predicated their choice of the correct statute of limitations on an analysis of the particular facts of each claim demonstrates that their approach inevitably breeds uncertainty and time-consuming litigation that is foreign to the central purposes of Sec. 1983. Almost every Sec. 1983 claim can be favorably analogized to more than one of the ancient common-law forms of action, each of which may be governed by a different statute of limitations....
 
 
 16
 ... If the choice of the statute of limitations were to depend upon the particular facts or the precise legal theory of each claim, counsel could almost always argue, with considerable force, that two or more periods of limitations should apply to each Sec. 1983 claim. Moreover, under such an approach different statutes of limitations would be applied to the various Sec. 1983 claims arising in the same State, and multiple periods of limitations would often apply to the same case. There is no reason to believe that Congress would have sanctioned this interpretation of its statute.
 
 
 17
 105 S.Ct. at 1945-46 (footnotes omitted).[12] The Court also expressed a concern that the somewhat arbitrary selection of one analogy over another can appear result-oriented, and thereby undermine the appearance of neutral justice. 105 S.Ct. at 1945 n. 24. The Court concluded that "[t]he federal interests in uniformity, certainty, and the minimization of unnecessary litigation all support the conclusion that Congress favored this simple approach" of selecting "in each State, the one most appropriate statute of limitations for all Sec. 1983 claims." 105 S.Ct. at 1947.
 
 
 18
 Civil RICO is as far removed from any traditional state cause of action as is Sec. 1983.[13] This is well-illustrated by Durante Brothers and Sons v. Flushing National Bank, 755 F.2d 239 (2d Cir.), cert. denied, --- U.S. ---, 105 S.Ct. 3530, 87 L.Ed.2d 564 (1985), where the Court of Appeals rejected the district court's choice of a state statute of limitations for actions to recover an overcharge of interest in a RICO case predicated on collection of an unlawful debt. The court pointed out that this seemingly apt analogy dissolved when the elements of the RICO claim were closely examined:
 
 
 19
 In the context of the allegations made here, therefore, success on these counts would require proof that, inter alia, (1) there was a RICO enterprise, (2) its activities affected interstate commerce, (3) the individual defendants were employed by or associated with the enterprise, (4) the Bank used, in the operation of the enterprise, income derived from the collection of unlawful debt, and (5) the individual defendants participated in the conduct of affairs of the enterprise through the collection of unlawful debt. 18 U.S.C. Sec. 1962(a) and (c). In addition, to prove that what was collected was an unlawful debt within the meaning of RICO, Durante would have to show that (6) the debt was unenforceable in whole or in part because of state or federal laws relating to usury, (7) the debt was incurred in connection with "the business of lending money ... at a [usurious] rate," and (8) the usurious rate was at least twice the enforceable rate. Id. Sec. 1961(6). And Durante would have to show that (9) as a result of the above confluence of facts, (10) it was injured in its business or property. Id. Sec. 1964(c).
 
 
 20
 755 F.2d at 248.
 
 The court went on to state:
 
 21
 The above listing of elements that must be proven in order to establish civil RICO liability for collection of an unlawful debt makes clear that the civil RICO action is not simply an action to recover excessive interest or to enforce a penalty for the overcharge. RICO is concerned with evils far more significant than the simple practice of usury.... In contrast, a state law claim ... could be established without proof of nine of the ten listed elements of the civil RICO claim.
 
 
 22
 755 F.2d at 248-49. We believe a similar analysis would apply to any RICO claim. Concepts such as RICO "enterprise" and "pattern of racketeering activity" were simply unknown to common law, and all federal crimes contain jurisdictional and other elements irrelevant to any state civil action. Thus, as with Sec. 1983, any analogies to traditional state causes of action "are bound to be imperfect." Wilson v. Garcia, 105 S.Ct. at 1945.
 
 
 23
 This case provides abundant evidence that a particularized approach to borrowing statutes of limitations "inevitably breeds uncertainty and time-consuming litigation." Even RICO claims based on "garden variety" business disputes might be analogized to breach of contract, fraud, conversion, tortious interference with business relations, misappropriation of trade secrets, unfair competition, usury, disparagement, etc., with a multiplicity of applicable limitations periods. A state may even have different limitations periods for common law fraud and securities fraud. See also Eisenberg v. Gagnon, 564 F.Supp. 1347, 1353-54 (E.D.Pa.1983), rev'd in part, 766 F.2d 770 (3d Cir.), cert. denied, --- U.S. ---, 106 S.Ct. 343, 88 L.Ed.2d 290 (1985). More extreme cases might include allegations sounding in assault, battery, false imprisonment, infliction of emotional distress, abuse of process, or trespass to land or chattels. The fact that RICO requires at least two predicate acts in all cases makes it even more likely that more than one analogy will have force in a given case.[14] "The current approach is virtually guaranteed to incite complex and expensive litigation over what should be a straightforward matter." A.B.A. Section of Corporation, Banking and Business Law, Report of the Ad Hoc Civil RICO Task Force 391-92 (1985) [hereinafter cited as "Task Force Report"].[15]
 
 
 24
 In Wilson v. Garcia the Court stated that "the legislative purpose to create an effective remedy for an enforcement of federal civil rights is obstructed by uncertainty in the applicable statute of limitations, for scarce resources must be dissipated by useless litigation on collateral matters." 105 S.Ct. at 1947 (footnote omitted). Like Sec. 1983, civil RICO was intended to be a useful remedial device and a supplement to criminal law enforcement in an area peculiarly in need of federal intervention. Sedima, 105 S.Ct. at 3286. As today's cases demonstrate, its effectiveness can be substantially thwarted by uncertainty, with the concommitant dissipation of legal resources. We hold, then, that in borrowing state limitations periods for civil RICO claims courts must select, in each state, the one most appropriate statute of limitations for all civil RICO claims. See also Electronic Relays v. Pacente, 610 F.Supp. 648 (N.D.Ill.1985); Victoria Oil v. Lancaster Corp., 587 F.Supp. 429 (D.Colo.1984). But see Silverberg v. Thomson McKinnon Securities, 787 F.2d 1079 (6th Cir.1986).
 
 C. The Applicable Limitations Period
 
 25
 The final stage in our inquiry is the selection of the one Pennsylvania limitations period that will govern all civil RICO actions arising there. This process of characterization cannot take place in a vacuum--it would accomplish nothing to characterize civil RICO in a way that does not correspond to any existing Pennsylvania statute of limitations. Rather, we must, as the Supreme Court did in Wilson v. Garcia, choose the best out of the available candidates. We have been greatly aided in this process by the parties' thorough supplemental briefing.
 
 
 26
 In Wilson v. Garcia, the Supreme Court chose a state limitations period for "personal injury" actions to govern Sec. 1983 cases in New Mexico.[16] Given that the Court had earlier conceded that characterization "will often be somewhat arbitrary," 105 S.Ct. at 1946 n. 24, it should not be surprising that the Court did not present a very detailed rationalization for its choice. Nonetheless, there is some guidance to be extracted from their discussion.
 
 
 27
 The Court noted that "[t]he atrocities that concerned Congress in 1871 plainly sounded in tort." 105 S.Ct. at 1948. Of the potential tort analogies, the Court stated that "Congress unquestionably would have considered the remedies established in the Civil Rights Act to be more analogous to tort claims for personal injury than, for example, to claims for damages to property or breach of contract." Id. The Court's basis for this categorical statement was the language of the fourteenth amendment: "no person shall be deprived of life, liberty or property...." "A violation of that command is an injury to the individual rights of the person." Id. The only other point the Court mentioned as favoring the personal injury characterization was that:
 
 
 28
 General personal injury actions, sounding in tort, constitute a major part of the total volume of civil litigation in the state courts today, and probably did so in 1871 when Sec. 1983 was enacted. It is most unlikely that the period of limitations applicable to such claims ever was, or ever would be, fixed in a way that would discriminate against federal claims, or be inconsistent with federal law in any respect.
 
 
 29
 105 S.Ct. at 1949.
 
 
 30
 We may also obtain some guidance from the Court's reasons for rejecting two other proposed analogies. First, the Court stated that the "relative scarcity of statutory claims when Sec. 1983 was enacted makes it unlikely that Congress would have intended to apply the catchall periods of limitations for statutory claims that were later enacted by many states." 105 S.Ct. at 1948 (also noting that Sec. 1983 enforces constitutional, not only statutory, rights). Second, the Court rejected an analogy to state remedies for wrongs committed by public officials as it was the very inadequacy of such remedies, "that led Congress to enact the Civil Rights Act in the first place." 105 S.Ct. at 1949 (footnote omitted).
 
 
 31
 With this background, we proceed to consider the merits of various limitations periods available under Pennsylvania law.[17] The suggested candidates are the limitations periods for common law fraud,[18] for civil penalty or forfeiture, 42 Pa.Cons.Stat.Ann. Sec. 5524 (a "potpourri" two-year statute of limitations), and the "catchall" six-year residual statute of limitations. Clearly, we should not expect an epiphany through which the "essence" of civil RICO is revealed to us. Rather, we can hope for no more than finding a workable rule that is consonant with the purposes of civil RICO, and defensible under reasonably neutral criteria of statutory construction.
 
 Fraud
 
 32
 Malley-Duff has suggested that common law fraud would provide a suitable analogy for all civil RICO claims. As one court has stated, however, "it is obvious that the common law fraud analogy falls far short of capturing the multitude of factual bases on which RICO can be based." Electronic Relays, 610 F.Supp. at 651. We, too, are reluctant to elevate one predicate act among many to the status of a uniform RICO characterization. Even if it is true, as Malley-Duff argues, that fraud is the predicate act upon which most civil RICO actions are premised, see also Task Force Report at 55-56, we must note that this trend has been the subject of increasing disquietude over the federalization of state common law. See Sedima, 105 S.Ct. at 3293 (Marshall, J., dissenting); 131 Cong.Rec. S10285-88 (1985) (Remarks of Sen. Hatch). Many current proposals to curtail civil RICO are directed to precisely this point. For example, Senate Bill 1521, 99th Cong., 1st Sess. (1985), would require at least one predicate act other than mail, wire, or securities fraud to make out a civil RICO claim.
 
 
 33
 Though the suggestion is not without some merit, we think that characterizing RICO as essentially a fraud action would be to have the tail wag the dog. We reject this approach.
 
 Civil Penalty or Forfeiture
 
 34
 It is also suggested that RICO can be broadly analogized to actions for civil penalty or forfeiture. In Pennsylvania such actions are now governed by a two-year statute of limitations, 42 Pa.Cons.Stat.Ann. Sec. 5524(5) (Purdon Supp.1985), although at the time these cases were brought, it was a one-year period when brought by private parties, 42 Pa.Cons.Stat.Ann. Sec. 5523(2) (1981).
 
 
 35
 We do not find this analogy forceful. Civil RICO is clearly not a forfeiture statute--the recovery of a successful private plaintiff is based on the injury sustained ("threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee"), not on what the defendant has gained through illegal conduct. Nor do we think the treble damage provision is primarily intended as a penalty. See Task Force Report at 391. More important, it is an incentive for private attorneys general to bring suit. We would also be concerned that the one-year limitations period that would be applicable to this case if the forfeiture analogy were adopted may, because it is so short, contravene the broad remedial purposes of civil RICO. We decline to characterize civil RICO as a penal statute.
 
 42 Pa.Cons.Stat.Ann. Sec. 5524
 
 36
 Section 5524 is a two-year statute of limitations, covering a potpourri of civil actions. It provided at the time relevant to this appeal:
 
 
 37
 The following actions and proceedings must be commenced within two years:
 
 
 38
 (1) An action for assault, battery, false imprisonment, false arrest, malicious prosecution or malicious abuse of process.
 
 
 39
 (2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect of or unlawful violence or negligence of another.
 
 
 40
 (3) An action for taking, detaining or injuring personal property, including actions for specific recovery thereof.
 
 
 41
 (4) An action for waste or trespass of real property.
 
 
 42
 (5) An action upon a statute for civil penalty or forfeiture, where the action is given to a government unit.
 
 
 43
 (6) An action against any officer of any government unit for the nonpayment of money or the nondelivery of property collected upon execution or otherwise in his possession.
 
 
 44
 It is argued by amicus Congress Financial Corporation that this two-year period should be borrowed for civil RICO because "it is indisputable that almost all, if not all, of the predicate RICO acts ... would be included, in a civil context, within Sec. 5524."
 
 
 45
 We find this proposal without merit. The premise that most, "if not all," RICO predicate acts would be covered by this statute is transparently false. Most RICO predicate acts, such as gambling, obstruction of law enforcement, sports bribery, narcotic trafficking, violations of restrictions on payments and loans to unions, interstate transportation of stolen property, or trafficking in contraband cigarettes, simply do not correspond to private causes of action under common law. As one court, seeking to find a civil RICO analogy under Colorado law has stated: "The search for a precise definition may be futile, however, since Colorado's statutes of limitations retain the language of common law forms of action." Victoria Oil, 587 F.Supp. at 431.
 
 
 46
 More fundamentally, this proposal does not even do what Wilson commands, i.e., characterize the federal cause of action. Rather, it seeks to take advantage of the fortuitous circumstance that a number of potential state law analogies share a common limitations period. Such an approach will provide little guidance for the resolution of this problem in other states, and may prove particularly vulnerable to changes in the state statute of limitations scheme. We reject this approach.
 
 
 47
 "Catchall" Limitations Period
 
 
 48
 Like most states, Pennsylvania has enacted a residual "catchall" statute of limitations for actions, primarily based on statute, that are not governed by any more specific period of limitations. It provided at the time this case was filed:
 
 
 49
 The following actions and proceedings must be commenced within six years:
 
 
 50
 ....
 
 
 51
 (6) Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation).
 
 
 52
 42 Pa.Cons.Stat.Ann. Sec. 5527 (Purdon 1981).[19] In Wilson v. Garcia, the Court considered, but rejected, the application of such a catchall statute to Sec. 1983 claims:
 
 
 53
 The relative scarcity of statutory claims when Sec. 1983 was enacted makes it unlikely that Congress would have intended to apply the catchall periods of limitations for statutory claims that were later enacted by many states. Section 1983, of course, is a statute, but it only provides a remedy and does not itself create any substantive rights.... Although a few Sec. 1983 claims are based on statutory rights, ... most involve much more.... These guarantees of liberty are among the rights possessed by every individual in civilized society, and not privileges extended to the people by the legislature.
 
 
 54
 105 S.Ct. at 1948-49 (footnote omitted).
 
 
 55
 The Court's reasons for rejecting this analogy in the Sec. 1983 context simply do not apply to RICO. RICO was enacted in 1970, long after statutory causes of action and corresponding catchall limitations periods became commonplace. Thus, it would not be disingenuous (or anachronistic) to suggest that Congress might have approved of borrowing such statutes. Second, RICO is a strictly statutory remedy to enforce statutory rights. Thus, Wilson v. Garcia does not foreclose this court from adopting Sec. 5527 for civil RICO actions arising in Pennsylvania.
 
 
 56
 The A.B.A. Task Force on Civil RICO specifically approved of cases characterizing RICO in this way:
 
 
 57
 There are two varying approaches to characterizing RICO claims. Most courts use the state limitations period applicable to state law claims most similar to the predicate offenses alleged as part of the RICO claim. These cases in effect assume that the thrust of the RICO claim is to compensate injury caused by the underlying predicate offenses. In contrast, a few courts view RICO claims more broadly as a special statutory cause of action as to which the predicate offenses are only one element. These courts opt for the use of a state statute, if available, applying generally to all statutory causes of action that have no express statute of limitations.
 
 
 58
 The latter approach seems more consistent with the overall concept of RICO than the former. RICO is manifestly directed towards activities that go beyond the mere commission of predicate offenses, and many courts have balked at the concept of RICO as simply a new or alternative civil remedy for the underlying criminal violations.
 
 
 59
 Task Force Report at 389-91 (emphasis in original). See also Compton v. Ide, 732 F.2d 1429 (9th Cir.1984); Teltronics Services v. Anaconda-Ericsson, Inc., 587 F.Supp. 724 (E.D.N.Y.1984), aff'd, 762 F.2d 185 (2d Cir.1985); Seawell v. Miller Brewing Co., 576 F.Supp. 424 (M.D.N.C.1983). See also Durante Brothers, supra, (applying catchall statute to case before court); Creamer v. General Teamsters Local Union, 579 F.Supp. 1284 (D.Del.1984)(same).
 
 
 60
 Such an approach, moreover, recognizes that civil RICO is truly sui generis and that particular claims cannot be readily analogized to causes of action known at common law--the very observation that led us to search for a uniform limitations period in the first place. And like personal injury statutes, the catchall statutes are particularly unlikely to be fixed in a manner that would discriminate against federal claims. Thus, we hold that civil RICO actions arising in Pennsylvania shall be governed by the six-year limitations period of 42 Pa.Cons.Stat.Ann. Sec. 5527. Because it is clear that the acts relating to the termination of Malley-Duff's agency occurred within six years of the time this action was filed, we will reverse the district court's dismissal of the RICO claims arising out of these alleged acts.[20]
 
 III.
 
 61
 The district court dismissed the RICO claims predicated on the alleged obstructions of justice in Malley-Duff I because, it held, interference with a lawsuit did not constitute an injury to "business or property" within the meaning of RICO. We believe, especially in light of the Supreme Court's intervening decision in Sedima, that this constituted reversible error.
 
 
 62
 The district court relied on the analysis of Judge Garrity in Van Schaick v. Church of Scientology, 535 F.Supp. 1125 (D.Mass.1982), wherein he concluded that "persons injured in their business or property" should be read as meaning "business persons engaged in conventional commercial activity who allegedly suffered commercial injury" and that civil RICO should be "confine[d] ... to business loss from racketeering injuries." 535 F.Supp. at 1136-37. Interference with a lawsuit, the district court here said, was not such an injury. It went on to state that there were sound policy reasons for construing RICO as not permitting this claim: "There are other remedies available to plaintiff for such wrongs; e.g., discovery sanctions, evidentiary inferences in the original suit, contempt citations, and referral to the proper authorities for criminal investigation. The lure of lucrative treble damages under RICO is too great to permit recovery for such conduct as an injury to the person's 'property.' An enormous multiplicity of suits could result from holding otherwise." App. at 20a.
 
 
 63
 Though the district court's concerns are substantial ones, we do not believe its analysis can be squared with RICO as it is written or as construed in Sedima. If RICO's reference to injury to "business or property" is to be given meaning, RICO standing cannot be limited to "business" injuries only. We would certainly think, for example, that an individual harmed in his or her personal property by loansharking activities should have a civil remedy under RICO. A cause of action, of course, is a form of "property," and when it arises out of the termination of a business, we think it is not unfair to characterize conduct tending to impair it as "business injury." The unwritten "racketeering injury" requirement--analogous to the requirement of competitive injury for antitrust standing--was specifically addressed, and rejected, by the Supreme Court in Sedima:
 
 
 64
 Underlying the Court of Appeals' holding was its distress at the "extraordinary, if not outrageous," uses to which civil RICO has been put. [Sedima S.P.R.L. v. Imrex Co., Inc.] 741 F.2d, at 487 [2nd Cir.1984]. Instead of being used against mobsters and organized criminals, it has become a tool for everyday fraud cases brought against "respected and legitimate 'enterprises.' " Ibid. Yet Congress wanted to reach both "legitimate" and "illegitimate" enterprises.... The former enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences. The fact that Sec. 1964(c) is used against respected businesses allegedly engaged in a pattern of specifically identified criminal conduct is hardly a sufficient reason for assuming that the provision is being misconstrued. Nor does it reveal the "ambiguity" discovered by the court below. "[T]he fact that RICO has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." Haroco, Inc. v. American National Bank & Trust Co. of Chicago, [747 F.2d 384, 398 (7th Cir.1984) ].
 
 
 65
 It is true that private civil actions under the statute are being brought almost solely against such defendants, rather than against the archetypal, intimidating mobster. Yet this defect--if defect it is--is inherent in the statute as written, and its correction must lie with Congress. It is not for the judiciary to eliminate the private action in situations where Congress has provided it simply because plaintiffs are not taking advantage of it in its more difficult applications.
 
 
 66
 We nonetheless recognize that, in its private civil version, RICO is evolving into something quite different from the original conception of its enactors. See generally [Task Force Report ] at 55-69. Though sharing the doubts of the Court of Appeals about this increasing divergence, we cannot agree with either its diagnosis or its remedy. The "extraordinary" uses to which civil RICO has been put appear to be primarily the result of the breadth of the predicate offenses, in particular the inclusion of wire, mail, and securities fraud, and the failure of Congress and the courts to develop a meaningful concept of "pattern." We do not believe that the amorphous standing requirement imposed by the Second Circuit effectively responds to these problems, or that it is a form of statutory amendment appropriately undertaken by the courts.
 
 
 67
 105 S.Ct. at 3287 (footnote omitted).
 
 
 68
 Nor do we agree with the district court that because litigants have other potential remedies for obstructive conduct such as that alleged here, there can be no remedy under RICO. We must assume that by including obstruction of justice among the RICO predicate acts, Congress envisioned the statute being used, where all other requirements are met, to supplement remedies already available for such conduct.[21] Certainly, the possibility of a criminal prosecution cannot be sufficient reason for denying a civil RICO remedy--such a rule would eviscerate civil RICO entirely, since all predicate acts are, by definition, crimes. See footnote 1 supra. We hold that Malley-Duff's allegations of "great expenses, delays and inconvenience ... in its prosecution of the First Lawsuit" were a sufficient pleading of injury to business or property to give Malley-Duff RICO standing. See also Miller v. Glen & Helen Aircraft, Inc., 777 F.2d 496 (9th Cir.1985).
 
 IV.
 
 69
 Count V of Malley-Duff's complaint, based on 42 U.S.C. Sec. 1985(2), see footnote 2 supra, alleged intimidation of a trial judge, intimidation of plaintiff's counsel, intimidation of witnesses, destruction of evidence, and subornation of perjury, all in the context of the pretrial stages of Malley-Duff I. Relying on this court's decision in Brawer v. Horowitz, 535 F.2d 830 (3d Cir.1976), where we held that only acts directly affecting parties, witnesses or jurors--and not other acts that may merely influence the proceedings--are cognizable under this statute, the district court summarily dismissed all but the witness intimidation allegations. Malley-Duff does not seem to seriously challenge this holding, and we affirm it.
 
 
 70
 The district court went on, however, to dismiss the remaining Sec. 1985(2) allegations on the ground that the complaint did not allege that any witness was actually deterred from testifying "in court," but rather complained of delays, expenses, inconvenience, and the suppression of evidence during the pretrial phase. We think this is a crabbed and unwarranted reading of the statute. The language "in any court" is not as plain as the district court seemed to surmise and cannot be read so literally--a case may be described as "in" a certain court, even though no actual "courtroom" proceedings take place. Similarly, we think that a person asked to provide discovery in such a case, regardless of where or in what form, is for these purposes a witness "in" the court. Indeed, the statute distinguishes between being deterred from "attending such court" and from "testifying to any matter pending therein." As a policy matter, we think the statute's less than pellucid language should be read with a view to the fact that pretrial proceedings in 1870 did not have the importance they have today. Because cases can be won or lost, or their value substantially diminished, as a result of intimidation that affects witnesses' willingness or ability to provide discovery, we hold that the statute applies.[22]
 
 
 71
 The case the district court relied on in holding that pretrial intimidation does not give rise to a cause of action under Sec. 1985(2) is not on point. Kimble v. D.J. McDuffy, Inc. 648 F.2d 340 (5th Cir.) (in banc), cert. denied, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981) involved a claim that employees were terminated for having filed worker's compensation claims. The statute refers to retaliation for giving testimony, not for the filing of complaints. Thus, the Fifth Circuit could not square the case before it with the language of the statute.
 
 
 72
 A case closer to this one is Chahal v. Paine Webber, 725 F.2d 20 (2d Cir.1984), where the Sec. 1985(2) claim alleged that the defendants had conspired to intimidate an expert witness into withdrawing from the case. The underlying case had not gone to trial when the Sec. 1985(2) claim was brought, but nonetheless the court of appeals found a claim stated. Contrary to the district court here, which held that the only cognizable injuries are the actual failure of a witness to appear at trial, resulting in diminished recovery or loss of a lawsuit, the Second Circuit found it sufficient to allege as injury "the $1,410 paid to [the expert] for his services and cost of preparing him to assist in [the underlying] action. In any event one need not suffer monetary damage to prevail in an action for denial of civil rights." 725 F.2d at 24.
 
 
 73
 We agree with the Second Circuit that "[t]he essential allegations of a 1985(2) claim of witness intimidation are (1) a conspiracy between two or more persons (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiffs." 725 F.2d at 23. See also Miller v. Glen & Helen Aircraft, 777 F.2d at 498. Under this standard, Malley-Duff's allegations are sufficient to state a Sec. 1985(2) claim of witness intimidation.[23]
 
 V.
 
 74
 Having dismissed all of Malley-Duff's federal claims, the district court exercised its discretion and dismissed its pendent state claim for civil conspiracy as well. Because we reverse the dismissals of the federal claims, we will also reinstate the pendent claim for further consideration, intimating no view as to its sufficiency, timeliness, or merits.
 
 CONCLUSION
 
 75
 For the reasons stated in the foregoing opinion, we will reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.
 
 
 76
 SLOVITER, Circuit Judge, concurring in the judgment.
 
 
 77
 I join in Parts I, III, and IV of the majority opinion. As set forth in my concurring opinion in A.J. Cunningham Packing Corp. v. Congress Financial Corp., 792 F.2d 330, filed today, I disagree with the majority's approach in looking to state statutes of limitations to find one applicable to civil RICO claims. Instead, I would apply the four year statute set forth in section 4B of the Clayton Act, 15 U.S.C. Sec. 15b. The argument that a federal statute of limitations should govern was not presented by plaintiffs in this action. Nonetheless, my comments in A.J. Cunningham are equally applicable to the issue presented here.
 
 
 78
 Because the plaintiffs in this case filed their complaint within four years of the date that their claim accrued, I agree with the majority that their complaint was filed timely and I therefore concur in the majority's reversal of the judgment of the district court and remand for further proceedings.
 
 
 
 [1]
 18 U.S.C. Sec. 1964(c) creates a private cause of action:
 Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.
 Section 1962 outlaws (a) the use of income derived from "a pattern of racketeering activity" or through the collection of an "unlawful debt" (defined at 18 U.S.C. Sec. 1961(6) ) to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce, (b) the acquisition or maintenance of any interest in an enterprise through a pattern of racketeering activity or collection of an unlawful debt, (c) conducting or participating in the conduct of an enterprise through a pattern of racketeering activity or collection of unlawful debt, and (d) conspiring to violate any of these provisions. Malley-Duff's complaint contained counts based on each of the four subsections.
 "Racketeering activity" is defined in 18 U.S.C. Sec. 1961(1) as any act "chargeable" under several generically described state criminal laws, any act "indictable" under numerous specific federal criminal provisions, including mail and wire fraud, any "offense" involving bankruptcy or securities fraud, and drug-related activity that is "punishable" under federal law.
 A " 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. Sec. 1961(5).
 
 
 [2]
 This section provides in relevant part:
 If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.
 
 
 [3]
 The complaint relies on multiple violations of the federal mail and wire fraud statutes. 18 U.S.C. Secs. 1341, 1343, to establish the necessary element of a "pattern of racketeering activity."
 
 
 [4]
 These allegations invoke 18 U.S.C. Sec. 1503 (obstruction of justice), another RICO "predicate act." Specifically, the complaint alleges subornation of perjury, destruction of documents, interference with a United States Marshal, perjury, witness intimidation, and an attempt to blackmail the district judge originally assigned to Malley-Duff I
 
 
 [5]
 This appeal was initially listed for disposition on December 7, 1984, but was removed from the list for the purpose of supplemental briefing on issues raised by Sedima, S.P.R.L. v. Imrex Co., --- U.S. ----, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) and Wilson v. Garcia, --- U.S. ----, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)
 
 
 [6]
 As the late Judge Henry Friendly once wrote:
 It has also been long established that when Congress created a federal right but did not prescribe a period for its enforcement, federal courts will borrow the period of limitation prescribed by the state where the court sits.... The basis of this was that Congress could not have intended an unlimited period for enforcement as would otherwise exist in actions at law, and that, selection of a period of years not being the kind of thing judges do, federal judges should borrow the limitation statutes of the states where they sit.
 Moviecolor Limited v. Eastman Kodak Co., 288 F.2d 80, 83 (2d Cir.), cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961).
 
 
 [7]
 There is no dispute that, prior to 1978, fraud actions were governed by a six-year statute, and that 1982 amendments to the Pennsylvania Judicial Code make it clear that such actions are now subject to a two-year limitation. See 42 Pa.Cons.Stat.Ann. Sec. 5524(7) (Purdon Supp.1985). The question of which period applied during the intervening period, when this action was filed, has been the subject of considerable litigation. See, e.g., Vosbikian v. Wasserstrom, No. 84-4674 (E.D.Pa.1985) [available on WESTLAW, DCTU database] (available on LEXIS, Genfed library, Dist file) (six years); Bernicker v. Pratt, 595 F.Supp. 1034 (E.D.Pa.1984) (six years); Ferber v. Morgan Stanley Co., CCH Fed.Sec.L.Rep. p 99,634 (E.D.Pa.1984) (two years); Fickinger v. C-I Planning, Inc., 556 F.Supp. 434 (E.D.Pa.1982) (two years); Culbreath v. Simone, 511 F.Supp. 906 (E.D.Pa.1981) (six years). See also Fiebach & Doret, A Quarter Century Later--The Period of Limitations for Rule 10b-5 Damage Actions in Federal Courts Sitting in Pennsylvania, 25 Vill.L.Rev. 851, 855-56 n. 26 (1980) (six years). Because we decline to use the fraud analogy, infra, we need not reach this issue
 
 
 [8]
 A large part of the briefing and argument in this matter has been devoted to the difficult issue of when the RICO claims accrued. This relates to Malley-Duff's contention that even if a two-year limit applies, its claims are timely. Because we adopt a six-year period, infra, and it is clear that all conduct complained of occurred within that period, we do not reach the accrual issue
 
 
 [9]
 The Court cited no precedent for the three-part inquiry, and its origins are unclear. 105 S.Ct. at 1943. There is nothing in the opinion, however, that would suggest that the approach is unique to Sec. 1983 cases. Indeed, it appears to us that the Court intended to mark out a general approach to all statute of limitations borrowing problems
 
 
 [10]
 This court has held in two cases that Wilson v. Garcia should be applied retroactively in Sec. 1983 cases. See Smith v. City of Pittsburgh, 764 F.2d 188 (3d Cir.), cert. denied, --- U.S. ---, 105 S.Ct. 349, 88 L.Ed.2d 297 (1985); Fitzgerald v. Larson, 769 F.2d 160 (3d Cir.1985). In Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir.1985), we applied Wilson v. Garcia retroactively to a claim brought under 42 U.S.C. Sec. 1981. These results followed from the uncertainty that existed with regard to the applicable limitations period under Pennsylvania law prior to these cases, making it not inequitable to apply Wilson retroactively. See Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Given the even greater uncertainty that has existed with regard to the applicable limitations period in this case, see also footnote 7 supra, Wilson v. Garcia should, a fortiori, apply here
 
 
 [11]
 Section 1988 provides in relevant part:
 The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title "CIVIL RIGHTS," and of Title "CRIMES," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.
 
 
 [12]
 This court had followed the case-specific approach rejected by the Supreme Court in Wilson v. Garcia. See Polite v. Diehl, 507 F.2d 119 (3d Cir.1974) (in banc)
 
 
 [13]
 We do not suggest that civil RICO is a uniquely federal remedy in the same sense as Sec. 1983. A state could, as some have, create a private cause of action substantially similar to civil RICO. See Wright, A Look at State RICO Statutes in RICO: Expanding Uses in Civil Litigation (1984). Pennsylvania's RICO-type statute, 18 Pa.Cons.Stat.Ann. Sec. 911 (Purdon 1983), however, does not provide for a private cause of action. See D'Iorio v. Adonizio, 554 F.Supp. 222, 232 (M.D.Pa.1982). Though we do not have occasion to so decide, we note that where a state has created a private cause of action substantially similar to the federal civil RICO action, the state limitations period controlling such actions might be an appropriate choice for the federal courts to borrow, provided the period is not so short as to contravene federal policies
 
 
 [14]
 The statutory definition of 'racketeering activity,' 18 U.S.C. Sec. 1961(1), contains a laundry list of federal and state offenses. Unless the two alleged predicate acts are closely related, ... it is unlikely that both acts could be subject to the same statute of limitations. Under these circumstances, the federal court would be saddled with the unenviable task of selecting one of the two disparate limitations periods. Defendants would solve this dilemma by requiring the court to determine which predominates the complaint. Such a process could be arbitrary at best, and this Court is unwilling to engage in such capricious selections
 Morley v. Cohen, 610 F.Supp. 798, 809 (D.Md.1985).
 
 
 [15]
 This report was issued March 28, 1985 by a five member task force. It is neither approved by the A.B.A. nor does it represent the A.B.A.'s official position. It was, however, cited extensively by both the majority and dissenters in Sedima
 
 
 [16]
 The Court was careful to acknowledge that its approach would only achieve uniformity within each state. Though this can, in part, be a result of the fact that states will prescribe different periods of years for the same actions, the Court must also have been aware that a characterization useful in one state may find no counterpart in others. As Justice O'Connor pointed out in dissent, 105 S.Ct. at 1953, on the very day the Tenth Circuit decided Wilson v. Garcia, it also held that the personal injury characterization found no counterpart in Colorado's limitations scheme, and therefore adopted a different characterization and borrowed the catchall limitations period for actions on a statute. McKay v. Hammock, 730 F.2d 1367 (10th Cir.1984) (in banc). In still another case decided the same day, the Tenth Circuit borrowed a four-year statute of limitations which applies to actions for relief "not otherwise provided for by law" for Sec. 1983 actions arising in Utah. Mismash v. Murray City, 730 F.2d 1366 (10th Cir.1984) (in banc), cert. denied, --- U.S. ---, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985). Thus, Judge Sloviter's concurrence in A.J. Cunningham Packing Corp. v. Congress Financial Corp., 792 F.2d 330, is not correct in stating that the "absence of an available 'catch all' in all states" distinguishes this case from Wilson v. Garcia. Our choice of a characterization for civil RICO actions in Pennsylvania does not preclude choice of a different approach in other states within this Circuit. See footnote 13 supra, regarding State RICO statutes
 
 
 [17]
 It has also been suggested that this court borrow the Clayton Act's four-year limitation on private treble damage antitrust suits. In DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court held that federal courts should "turn away from state law" and borrow a limitation period from elsewhere in federal law "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial law making." 462 U.S. at 172, 103 S.Ct. at 2294
 A number of things can be said in favor of this characterization. RICO was drafted with the antitrust model of criminal sanctions supplemented by private treble damage actions in mind. Both the Clayton Act and RICO require that private plaintiffs be persons who have been "injured in [their] business or property." 15 U.S.C. Sec. 15(a); 18 U.S.C. Sec. 1964(c). Also, both RICO and the antitrust laws deal with a wide range of conduct affecting commerce. Finally, in favor of this characterization, it can be said that it promotes uniformity--not only within a state, but nationally as well.
 The factors militating against this characterization are that (1) though RICO and the Clayton Act both require injury to business or property for standing to sue, there is little overlap between the types of conduct that are prohibited: and (2) despite the fact that Congress consciously drew upon the antitrust model in drafting RICO, it did not include a comparable statute of limitations period, perhaps indicating a congressional intent that there not be a national standard. We have been cited no relevant legislative history on this point.
 On balance, we do not believe the Clayton Act analogy meets the high standard required by DelCostello to justify "turning away from state law." See also Task Force Report at 385-392.
 
 
 [18]
 As noted previously, it is not clear what that period was at the time this case was filed. See footnote 7 supra and accompanying text
 
 
 [19]
 The current catchall provision is the same in all material respects. 42 Pa.Cons.Stat.Ann. Sec. 5527 (Purdon Supp.1985)
 
 
 [20]
 In the wake of Sedima, in which both the majority and dissenting opinions stressed the need for courts to develop a meaningful approach to the RICO requirement of a "pattern" of racketeering activity, defendants have argued that, even if timely, Malley-Duff's RICO claims should be dismissed as failing to allege such a pattern. Sedima did not, however, give much guidance as to how "pattern" should be interpreted, other than to suggest that "continuity plus relationship" of predicate acts might be required. 105 S.Ct. at 3285 n. 14 (quoting S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969) ). We have no occasion to define its parameters here. Even under the very restrictive definition of "pattern" defendants would have us adopt, see Superior Oil Co. v. Fulmer, 785 F.2d 252 (8th Cir.1986), Northern Trust Bank/O'Hare v. Inryco, Inc., 615 F.Supp. 828 (N.D.Ill.1985), Malley-Duff's allegations of similar conduct in Cleveland, Chicago and other cities seems to us a sufficient pleading of a "pattern" of racketeering injury
 
 
 [21]
 Defendants argue that Malley-Duff should be denied a RICO remedy because it opted not to pursue a motion for sanctions within the context of Malley-Duff I. This seems to us a question of causation of damages, rather than a question of the type of conduct remediable under RICO. The district court may address the causation issue on remand
 
 
 [22]
 See also Chahal v. Paine Webber, 725 F.2d 20, 24 (2d Cir.1984):
 The statute does not define the term "witness." However, Congress' purpose, which was to protect citizens in the exercise of their constitutional and statutory rights to enforce laws enacted for their benefit, is achieved by interpreting the word "witness" liberally to mean not only a person who has taken the stand or is under subpoena but also one whom a party intends to call as a witness. Deterrence or intimidation of a potential witness can be just as harmful to a litigant as threats to a witness who has begun to testify.
 
 
 [23]
 The district court stated that even if its interpretation of Sec. 1985(2) was erroneous, as we have now held, "plaintiff's action may yet be barred by the statute of limitations." (Emphasis added.) This does not quite rise to the level of an alternative holding, and we do not find sufficient material in this record to make this determination ourselves. Nor has the issue been argued or briefed. We will therefore leave this issue open on remand